UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OSEN LLC,

      Plaintiff,

  – *versus* –

UNITED STATES DEPARTMENT OF STATE,

      Defendant.

No. 18 Civ. 6070 (JSR)

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

 

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Counsel for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

Of Counsel:

PETER ARONOFF
Assistant United States Attorney

## CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1
BACKGROUND .......................................................................................................................... 2
    I.    History and Background of the Instant Action ....................................................... 2
    II.   Classification Pursuant to Executive Order ............................................................ 2
    III.  Summary of Redacted Records ............................................................................... 4
ARGUMENT ................................................................................................................................. 4
    I.    Standard of Review ................................................................................................. 5
    II.   The Government Has Properly Asserted Exemption 1 ............................................ 7
    III.  The Government Has Properly Asserted Exemption 3 .......................................... 11
    IV.  The Government Properly Segregated Releasable Portions of the
           Redacted Records................................................................................................... 13
CONCLUSION ............................................................................................................................ 14

## AUTHORITIES

Page(s)

**Cases**

*ACLU v. DOJ*,
   681 F.3d 61 (2d Cir. 2012).................................................................................................. 5, 6, 7
*ACLU v. U.S. Dep't of,*
   *Def.*, 628 F.3d 612 (D.C. Cir. 2011) ......................................................................................... 7
*Am. Civil Liberties Union v. Dep't of State*,
   878 F. Supp. 2d 215 (D.D.C. 2012) ........................................................................................ 10
*Am. Civil Liberties Union v. United States Dep't of,*
   *Def.*, 901 F.3d 125 (2d Cir. 2018)......................................................................................... 7, 11
*Amnesty Int'l USA v. CIA*,
   728 F. Supp. 2d 479 (S.D.N.Y. 2010)................................................................................... 7, 12
*Baldrige v. Shapiro*,
   455 U.S. 345 (1982)................................................................................................................... 5
*Carney v. DOJ*,
   19 F.3d 807 (2d Cir. 1994)........................................................................................................ 5
*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
   331 F.3d 918 (D.C. Cir. 2003) .................................................................................................. 6
*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001)....................................................................................................................... 5
*Energy & Env't Legal Inst. v. United States Dep't of State*,
   No. 1:15-CV-423, 2017 WL 3763853 (E.D. Va. Aug. 28, 2017) ............................................. 9
*Ferguson v. FBI*,
   No. 89-5071, 1995 WL 329307 (S.D.N.Y. June 1, 1995) ......................................................... 6
*Frugone v. CIA*,
   169 F.3d 772 (D.C. Cir. 1999) .................................................................................................. 6
*Grand Cent. P'ship v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999)....................................................................................................... 5
*Halperin v. CIA*,
   629 F.2d 144 (D.C. Cir. 1980) .................................................................................................. 6
*Hamdan v. U.S. Dep't of Justice*,
   797 F.3d 759 (9th Cir. 2015) ................................................................................................... 12
*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989)................................................................................................................... 5
*Krikorian v. Dep't of State*,
   984 F.2d 461 (D.C. Cir. 1993).................................................................................................. 9
*Murphy v. Exec. Office for U.S. Attorneys*,
   789 F.3d 204 (D.C. Cir. 2015)................................................................................................. 11
*N.Y. Times Co. v. U.S. Dep't of,*
   *Def.*, 499 F. Supp. 2d 501 (S.D.N.Y. 2007)............................................................................ 12

*N.Y. Times Co. v. U.S. Dep't of Justice*,
   756 F.3d 100 (2d Cir. 2014) .................................................................................................. 6
*New York Times Co. v. DOJ*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) .................................................................................... 6
*Sims*,
   471 U.S. ............................................................................................................................... 12
*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009) ........................................................................................... 6, 7, 12
*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ............................................................................................... 6

### Statutes

5 U.S.C. § 552 ............................................................................................................................... 1
5 U.S.C. § 552(b) ........................................................................................................................ 13
10 U.S.C. § 424 ........................................................................................................................... 12
50 U.S.C. § 3024(i)(1) ................................................................................................................ 12
U.S.C. § 552(b)(1) ........................................................................................................................ 2

### Other Authorities

Fed. R. Civ. P. 56(a) ..................................................................................................................... 5
Federal Rule of Civil Procedure 56 .............................................................................................. 5
Executive Order 13526 ..................................................................................................... 2, 3, 7, 8

Defendant the United States Department of State ("State Department" or the "government") respectfully submits this memorandum of law in support of its motion for summary judgment in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

Plaintiff Osen LLC requested several dozen diplomatic cables and similar documents concerning Iraq and Iran from the United States Department of State. The cables, secure communications sent by U.S. government personnel in Iraq and Syria to Washington, include frank discussions of security and politics in Iraq in the period from 2004 to 2009. The government released 11 records in full, and released the remaining 29 located records in part, with redactions to protect classified information and intelligence information exempt from disclosure pursuant to FOIA exemptions 1 and 3.

The withholdings were proper. The government has withheld information that is currently and properly classified, which if disclosed could reasonably be expected to harm national security. The government's judgments about national security, which are entitled to deference, are logical. Releasing internal U.S. government discussions of (for example) security strategies and vulnerabilities with respect to Iraq, or detailed accounts of conversations with senior Iraqi officials discussing delicate political and internal security issues, would plainly damage U.S. national security and the United States' ability to conduct foreign affairs. And the government's detailed declaration leaves no doubt that the government carefully reviewed each classified record, withholding only that information that could still be expected to damage national security if released. The government's withholding of information about intelligence sources or methods, or the organization and functions of specific intelligence organizations, was also proper, because

Congress specifically exempted such information by statute. The government's motion for summary judgment should therefore be granted.

## BACKGROUND

### I.  History and Background of the Instant Action

On December 28, 2017, plaintiff Osen LLC made a FOIA request for six documents identified by title. *See* Complaint, ECF No. 1, ¶ 22 & Ex. A; Declaration of Eric F. Stein ("Stein Decl.") ¶ 8. Plaintiff made a second request for an additional thirty-six documents on June 6, 2018. Complaint ¶ 24 & Ex. C; Stein Decl. ¶ 8. Plaintiff brought suit on July 5. *See* Complaint. The government located 40 of the requested documents, and produced 11 in full. Stein Decl. ¶ 9. The remaining 29 documents were withheld in part pursuant to FOIA's exemptions 1 and 3 because they contain currently classified information or intelligence information exempt from disclosure by statute. Stein Decl. ¶ 9.

Plaintiff has agreed that the government's search for the records was adequate. Stein Decl. ¶ 10. Thus, the only issue before the Court is whether the government properly asserted exemptions as to the 29 records withheld in part (collectively, the "redacted records").

### II. Classification Pursuant to Executive Order

FOIA's exemption 1 permits the government to withhold records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [] in fact [are] properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The current standards and procedures for classification are given by Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13526").

Section 1.1 of the Executive Order lists four requirements for the classification of national security information: (1) an "original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or [] under the control

of the United States Government;" (3) the information must pertain to one or more of eight protected categories of information listed in section 1.4 of the Executive Order; and (4) an original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage." E.O. 13526 § 1.1(a)(1)-(4). The four protected categories of information listed in section 1.4 of the Executive Order that are relevant here are: "(a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology;" and "(d) foreign relations or foreign activities of the United States, including confidential sources."

    The Executive Order provides for three tiers of classification: confidential, secret, and top secret. Only the first two tiers are relevant to this case. The order provides that:

> "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.
>
> "Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe.

E.O. 13526 §§ 1.2(a)(2), (3).

    A classification determination is finite: it lasts for a specific period of time or until a specific event occurs. *Id*. § 1.5. However, information may be reclassified under certain circumstances if national security concerns persist. *See id*. § 1.5. Such reclassification can occur even after the agency has received a FOIA request for the records at issue, so long as the information has not previously been officially disclosed to the public. *Id*. § 1.7(d). In such circumstance the reclassification must be done on a document-by-document basis with the

3

personal participation of a senior agency official designated to oversee the agency's classification program. *Id.*

### III. Summary of Redacted Records

In connection with this motion, the government has produced a *Vaughn* index, in the form of a declaration, which describes each of the 29 redacted records. *See* Stein Decl. ¶¶ 19-106. That declaration provides a document-by-document discussion of the contents of each redacted record and the reasons for withholding the redacted portions. In overview, however, all of the redacted records except for two are diplomatic cables authored by United States diplomatic officials stationed in Iraq, and date to the time period from 2004 to 2009.[1] All of the records were designated as classified when written: 25 of the redacted records were originally classified as SECRET, while four were originally classified as CONFIDENTIAL.[2] As relevant here, the redacted records discuss a variety of topics, including the statements of specific senior foreign officials to U.S. government officials about sensitive matters; assessments of security risks to Iraqi or U.S. security or military forces; discussions of the actions and aims of various regional actors, including foreign states; discussions of internal Iraqi politics, and the relationship of political developments to U.S. or other states' national interests; and other, similar, matters. *See generally* Stein Decl. ¶¶ 19-106.

### ARGUMENT

The government properly withheld certain information contained in 29 of the responsive records pursuant to FOIA exemption 1. This information was properly classified because the

---

[1] The other two documents are a cable from the U.S. embassy in Damascus, Syria, *See* Stein Decl. ¶¶ 43-45, and a memorandum from the acting Assistant Secretary for the Bureau of Intelligence and Research to the Secretary of State, *see* Stein Decl. ¶¶ 85-87.
[2] Following conventional usage, this brief capitalizes the terms SECRET and CONFIDENTIAL when they are used formally to indicate a classification status.

disclosure of such information could reasonably be expected to damage national security. Additional information contained in one record (and some information also withheld under exemption 1) was properly withheld under FOIA exemption 3 because it contains intelligence information exempt from FOIA disclosure by other statutes.

## I.     Standard of Review

FOIA represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation and quotation marks omitted). Thus, while FOIA generally requires disclosure of agency records, the statute recognizes "that public disclosure is not always in the public interest," *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982); *accord ACLU v. DOJ*, 681 F.3d 61, 69 (2d Cir. 2012), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001).

A motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is the procedural vehicle by which FOIA cases are typically decided. *See, e.g.*, *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden" on summary judgment. *Carney*, 19 F.3d

at 812 (footnote omitted).³ The agency's declarations in support of its determinations are "accorded a presumption of good faith." *Id.* (citation and quotation marks omitted).

In addressing requests for release of classified information relating to national security matters, courts repeatedly have recognized "the uniquely executive purview of national security" and "the relative competencies of the executive and judiciary," and "have consistently deferred to executive affidavits predicting harm to the national security." *Wilner v. NSA*, 592 F.3d 60, 76 (2d Cir. 2009) (internal quotation marks omitted); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). Courts must give "substantial weight" to agencies' declarations regarding national security. *ACLU v. Dep't of Justice,* 681 F.3d 61, 69 (2d Cir. 2012); *N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 112 (2d Cir. 2014); *Wolf*, 473 F.3d at 374. Accordingly, in FOIA cases involving matters of national security, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003) (courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review").

Absent evidence of bad faith, where a court has enough information to understand why an agency classified information, it should not second-guess the agency's facially reasonable decisions. *See Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999). Ultimately, in the national security context, an agency's justification for applying a FOIA exemption "is sufficient if it

---

³ Because agency affidavits alone will support a grant of summary judgment in a FOIA case, Local Rule 56.1 statements are unnecessary. *See Ferguson v. FBI*, No. 89-5071, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995) (noting "the general rule in this Circuit"), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *see also, e.g.*, *New York Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012).

appears logical and plausible." *Am. Civil Liberties Union v. United States Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018); *accord Wilner*, 592 F.3d at 73; *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 508 (S.D.N.Y. 2010) (explaining decision to "defer[] to [] executive declarations predicting harm to the national security"). Because assessment of harm to national security is entrusted to the Executive Branch, "the government's burden is a light one," "searching judicial review" is inappropriate, and "plausible" and "logical" government arguments for nondisclosure should be sustained. *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011); *see Wilner*, 592 F.3d at 73; *ACLU*, 681 F.3d at 69.

Under this deferential standard, the government's declaration demonstrates that the withheld portions of the records are exempt from disclosure under FOIA exemptions 1 and 3.

## II. The Government Has Properly Asserted Exemption 1

The government properly asserted exemption 1 to withhold information that is currently and properly classified, and hence its disclosure could reasonably be expected to harm national security.

The declaration, executed by a Department official with original classification authority, *see* Stein Decl. ¶ 4, provides a detailed, document-by-document discussion of the basis for classification, and hence withholding. The declaration makes clear that all of the withheld information meets the criteria for classification under E.O. 13526. *See* Stein Decl. ¶ 14. The declaration also makes clear that every redacted record—including both those whose automatic declassification date had already come at the time of review, and those that remained classified—was reviewed line-by-line to determine whether any information could be released. Stein Decl. ¶ 13. Furthermore, substantial portions of the redacted records that had been classified at the time they were created were released pursuant to these requests. Stein Decl.

7

¶ 107. No information was newly classified during the review for this case, nor was the classification level of any information upgraded. Stein Decl. ¶ 107.

As an overview, the information withheld under exemption 1 consists primarily of foreign government information and information that pertains to foreign relations or foreign activities of the United States, which are classified pursuant to sections 1.4(b) and (d).[4] *See generally* Stein Decl. ¶¶ 19-106 (listing every document as containing some information classified under § 1.4(d), and every document except C06627811, described at ¶¶ 64-65, and C06652425, described at ¶¶ 85-86, as containing information classified under § 1.4(b)). Many of the redacted portions are withheld for both reasons: the cables, authored by United States government personnel, often recount the statements of foreign officials while analyzing the import of those statements for the conduct of United States foreign affairs. The records also contain discussions of U.S. military plans, operations, or capabilities, *see* Stein Decl. ¶¶ 98-99 (document C06627796), which are classified pursuant to E.O. 13526 § 1.4(a); and intelligence activities, including sources and methods, *see* Stein Decl. ¶¶ 85-86, 91-92 (documents C06652425 and C06627781), which are classified pursuant to E.O. 13526 § 1.4(c).

Many documents contain descriptions of the frank discussions of political and security developments in Iraq made by high-ranking Iraqi officials, including members of Iraq's legislature and executive, including its military and security services, many of whom remain active in Iraqi politics today. *See* Stein Decl. ¶¶ 26, 29, 53, 65, 68, 80, 96, 102, 105. The declaration explains that accounts of these sensitive conversations are properly classified because

---

[4] Executive Order 13526 defines "foreign government information" to include "information provided to the United States Government by a foreign government" or group of governments "with the expectation that the information, the source of the information, or both, are to be held in confidence." E.O. 13526 § 6.1(s)(1).

8

they constitute foreign government information, and their release would damage the ability of the United States to interact with those officials.

Indeed, much of the withheld information summarizes or quotes frank conversations between U.S. diplomats and Iraqi officials at the highest levels of government—Iraq's prime minister, national security advisor, foreign minister, and president, for example—about security, internal politics, relationships with other states and groups, and the relationship with the United States government. *See* Stein Decl. ¶¶ 23, 32, 41, 56, 59, 96 (prime minister); ¶¶ 20, 50, 71 (national security advisor); ¶¶ 68, 102 (foreign minister); ¶ 38 (president). As the declaration repeatedly explains, if senior foreign officials' candid assessments of sensitive affairs are disclosed, they and other foreign officials will be less likely to convey sensitive information to the United States government in the future. *See, e.g.*, Stein Decl. ¶ 35 ("Release of this information reasonably could be expected to cause serious damage to the national security by reducing the likelihood that senior foreign officials will be willing to convey sensitive information, including assessments of their vulnerabilities, to the U.S. Government."); *see also, e.g.*, *id.* ¶¶ 38, 41, 44, 47. The United States is a repeat diplomatic player. Even apart from the damage that disclosure would cause to specific relationships with individuals, breaches of past confidentiality will damage the government's ability in general to gather sensitive information from foreign governments it needs to successfully conduct foreign affairs and protect U.S. national security in the future. For these reasons, courts regularly uphold assertions of exemption 1 in similar circumstances. *See, e.g.*, *Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993) (upholding withholding discussions between U.S. and foreign diplomatic officials because its release could "jeopardize reciprocal confidentiality" (quotation marks omitted)); *see also Energy & Env't Legal Inst. v. United States Dep't of State*, No. 1:15-CV-423, 2017 WL

9

3763853, at *7 (E.D. Va. Aug. 28, 2017); *Am. Civil Liberties Union v. Dep't of State*, 878 F. Supp. 2d 215, 222 (D.D.C. 2012).

Other documents contain detailed information about the conduct of United States foreign relations or activities, which is properly classified pursuant to section 1.4(d) because its release would give insight into U.S. diplomatic practice and strategy that could allow others an advantage in dealings with the United States. As another illustration, one record withheld in part contains "comments by the U.S. Ambassador and U.S. Commanding General about specific threats to the stability of Iraq, including foreign attempts to influence Iraq and factors upon which the success of such attempts depends." Stein Decl. ¶ 102. Releasing this information would "reveal[] factors that the U.S. considered important to establishing security and resisting foreign influence attempts, which could provide a roadmap to malign actors for how to destabilize a fragile security situation and frustrate U.S. and local efforts to establish security," and thus "reasonably could be expected to cause serious damage to national security." Stein Decl. ¶ 102. As another example, other withheld information includes the U.S. Ambassador's analysis of U.S. diplomatic strategy and recommendations about specific courses of action; disclosing such information would damage the United States' ability to conduct foreign affairs by laying out diplomatic strategy, which depends on discretion and confidentiality for success. Stein Decl. ¶ 35.

Finally, three records have portions withheld because they contain classified military or intelligence information. Document C06627796 is classified in part because it describes the "relationship between U.S. military units and Iraqi police, including specific incidents involving named Iraqi police officials." Stein Decl. ¶ 99. The release of such information could reasonably be expected to cause serious damage to national security by "revealing operational vulnerabilities

10

and weaknesses between U.S. forces and local allies." Stein Decl. ¶ 99. Two other records, C06652425 and C06627781, contain discussions of intelligence activities. The first discusses intelligence processes and projections, and predictions about the consequences of U.S. military operations in Iraq, which if released could reasonably be expected to "inflame[e] the political and security situation in Iraq." Stein Decl. ¶ 86. The second cable refers to intelligence activities and sources, and releasing it could reasonably be expected to "reveal[] that intelligence reporting exists pertaining to particular matters" and "identify[] individuals about whom intelligence reporting exists." Stein Decl. ¶ 92.

In sum, the Stein declaration offers the maximum detail possible in a public setting about the withheld content of each document and the reason for its classification, including an explanation as to why the disclosure of such record could reasonably be predicted to harm national security. The declaration well exceeds the government's burden of giving "logical" and "plausible" reasons for executive branch judgments about national security threats—including, specifically, decisions about what information should be classified. *See, e.g.*, *ACLU*, 901 F.3d at 133-34 (reciting standard, and noting that the Second Circuit and other courts "have consistently deferred to executive declarations predicting harm to the national security, and have found it unwise to undertake searching judicial review" (quotation marks and brackets omitted)).

### III. The Government Has Properly Asserted Exemption 3

The government also withheld intelligence information from one record under FOIA exemption 3 because specific statutes exempt such information from FOIA.

Exemption 3 "permits an agency to withhold records that are 'specifically exempted from disclosure by statute.'" *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(3)). Unlike other FOIA exemptions, whose applicability depends on the specific factual contents of records, exemption 3 is different: "the sole issue for

11

decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72 (quotation marks omitted).

Here, the government withheld certain information from document C06627781 under exemption 3 because it contains information protected by two separate statutes: information concerning intelligence sources and methods, protected by 50 U.S.C. § 3024(i)(1) (a provision of the National Security Act of 1947, as amended); and information concerning the function of one or more of the organizations of the Department of Defense protected by 10 U.S.C. § 424 (a provision of the National Defense Authorization Act for Fiscal Year 1997, as amended). *See* Stein Decl. ¶ 93.

Both of these statutes are proper exempting statutes within the meaning of FOIA exemption 3. First, the Supreme Court (and other courts) have recognized the National Security Act's directive to protect intelligence sources and methods from disclosure meets the exemption 3 standard. *See, e.g.*, *Sims*, 471 U.S. at 167-68; *Amnesty Int'l USA*, 728 F. Supp. 2d at 501; *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 512 (S.D.N.Y. 2007). Second, the plain language of section 424 states that "no provision of law shall be construed to require the disclosure of" either "the organization or any function of" certain specified intelligence organizations within the Department of Defense. 10 U.S.C. § 424. For this reason, courts have recognized that it is also an exempting statute. *See, e.g.*, *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 776 (9th Cir. 2015) (citing cases). Nor is there any doubt from the Stein Declaration that the withheld information falls within the ambit of either statute. *See* Stein Decl. ¶ 93 ("The information redacted on Exemption 3 concerns intelligence sources and methods, and concerns the function of one or more of the organizations of the Department of Defense listed in 10 U.S.C. § 424…."). It was therefore properly withheld. *See, e.g.*, *Hamdan*, 797 F.3d at 775-76.

**IV. The Government Properly Segregated Releasable Portions of the Redacted Records**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The government has met this obligation.

The Stein Declaration makes clear that the government conducted a line-by-line analysis of every single record. Indeed, 11 of the 40 located records were released in full. For the remaining 29 records, the government withheld only the information that was exempt and released the remainder. *See, e.g.*, Stein Decl. ¶¶ 21, 24, 27. Many of these records had substantial portions released, including previously classified information that was declassified when reviewed pursuant to these FOIA requests. Stein Decl. ¶ 107. No information was newly classified during review for these requests, and no information had its classification status upgraded. Stein Decl. ¶ 107. As detailed in the declaration, the information withheld constituted only exempt classified or intelligence information. Thus, the government has satisfied its obligations pursuant to section 552(b).

## CONCLUSION

The government's motion for summary judgment should be granted.

Dated: November 9, 2018
      New York, New York

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney
                              Southern District of New York

By:    */s/ Peter Aronoff*
            PETER ARONOFF
            Assistant United States Attorney
            86 Chambers Street, Third Floor
            New York, New York 10007
            Telephone: (212) 637-2697
            Facsimile: (212) 637-2717
            E-mail: peter.aronoff@usdoj.gov