UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSEN LLC,

          Plaintiff,

    – *versus* –

UNITED STATES DEPARTMENT OF
STATE,

          Defendant.

No. 18 Civ. 6070 (JSR)

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDMGENT AND REPLY IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Counsel for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

Of Counsel:

PETER ARONOFF
Assistant United States Attorney

# CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.    There Has Been No Official Disclosure of the Redacted Records
or Their Contents ................................................................................................. 2

        A.    Legal Standard ................................................................................... 2

        B.    The Purported WikiLeaks Documents Fail the *Wilson* Test ............................ 4

        C.    Plaintiff's Non-WikiLeaks Documents Also Fail to Show
Official Disclosure ................................................................................. 8

    II.   The Exemption 1 Redactions Protect Properly Classified Information ................. 10

        A.    The Department Followed Proper Procedures for
Reclassifying Information ................................................................ 10

        B.    The Government Has Logically and Plausibly Explained Why
the Redacted Information Must Be Withheld Under Exemption 1 to
Protect National Security ................................................................ 11

    III.  The Government's Exemption 3 Withholdings Are Proper ................... 16

CONCLUSION ..................................................................................................................... 17

# AUTHORITIES

Page(s)

### Cases

*ACLU v. U.S. Dep't of,*
  *Def.*, 628 F.3d 612 (D.C. Cir. 2011) ................................................................... 3
*Am. Civil Liberties Union v. Dep't of State,*
  878 F. Supp. 2d 215 (D.D.C. 2012) ................................................................ 5, 6
*Am. Civil Liberties Union v. United States Dep't of,*
  *Def.*, 901 F.3d 125 (2d Cir. 2018).................................................................... 14
*Associated Press v. Fed. Bureau of Investigation,*
  265 F. Supp. 3d 82 (D.D.C. 2017).................................................................. 16
*Fitzgibbon v. Cent. Intelligence Agency,*
  911 F.2d 755 (D.C. Cir. 1990) .......................................................................... 5
*Florez v. C.I.A.,*
  No. 14-CV-1002 SHS, 2015 WL 728190 (S.D.N.Y. Feb. 19, 2015) ................ 16
*Florez v. Cent. Intelligence Agency,*
  829 F.3d 178 (2d Cir. 2016)............................................................................. 7
*Frugone v. CIA,*
  169 F.3d 772 (D.C. Cir. 1999) ......................................................................... 7
*Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy,*
  891 F.2d 414 (2d Cir. 1989)............................................................................. 4
*Intellectual Prop. Watch v. United States Trade Representative,*
  205 F. Supp. 3d 334 (S.D.N.Y. 2016).............................................................. 14
*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981) .......................................................................... 3
*New York Times Co. v. FBI,*
  297 F. Supp. 3d 435 (S.D.N.Y. 2017).............................................................. 9
*New York Times Co. v. U.S. Dep't of Justice,*
  756 F.3d 100 (2d Cir.)............................................................................ 2, 3, 4
*Phillippi v. CIA,*
  655 F.2d 1325 (D.C. Cir. 1981) ...................................................................... 13
*Pub. Citizen v. Dep't of State,*
  11 F.3d 198 (D.C. Cir. 1993) ........................................................................... 3
*Washington Post v. U.S. Dep't of,*
  *Def.*, 766 F. Supp. 1 (D.D.C. 1991) .............................................................. 14
*Wilner v. NSA,*
  592 F.3d 60 (2d Cir. 2009)............................................................................ 16
*Wilson v. CIA,*
  586 F.3d 171 (2d Cir. 2009)................................................................... passim
*Wolf v. CIA,*
  473 F.3d 370 (D.C. Cir. 2007) .................................................................. 3, 12

**Statutes**

10 U.S.C. § 424....................................................................................................... 16, 17

22 U.S.C. § 2656f ........................................................................................................ 10

50 U.S.C. § 3024(i)(1) ................................................................................................. 16

**Other Authorities**

Executive Order 12958 ................................................................................................ 11

Executive Order 13526 .......................................................................................... passim

Defendant the United States Department of State respectfully submits this memorandum of law in opposition to plaintiff's motion for summary judgment and as reply in support of its own motion.

## PRELIMINARY STATEMENT

The government's opening papers logically and plausibly explain why it was proper to withhold some information—primarily, U.S. diplomats' accounts of sensitive conversations with foreign politicians and officials about the state of Iraq between 2004 and 2009—from classified State Department documents under FOIA exemptions 1 and 3. In response, plaintiff claims that the putative unofficial release of the same documents on WikiLeaks, as well as various press accounts and official government releases, undermine the exemptions. Plaintiff is wrong.

First, the State Department has not commented on the authenticity of, let alone officially acknowledged, the purported Department documents distributed on WikiLeaks. Nor has any legitimate, official release of U.S. government information matched the specific information withheld in this case. Therefore, under *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009), the government has not waived any exemptions.

Second, the government has withheld only properly classified material pursuant to exemption 1. The government has logically and plausibly demonstrated why releasing this specific information could reasonably be expected to harm national security. Plaintiff's citations to a variety of other information on the general topic of Iranian involvement in Iraq do not undercut the government's explanation. It is not up to a private law firm to decide what information is reasonably likely to harm national security if released.

Third, the government has explained why some intelligence-related information was withheld pursuant to exemption 3 because its release is exempted by two statutes.

1

For these reasons, the government's motion for summary judgment should be granted, and plaintiff's should be denied.

## ARGUMENT

### I.    There Has Been No Official Disclosure of the Redacted Records or Their Contents

The State Department, as a matter of policy, "does not comment on documents that have not been officially disclosed but that are distributed by persons outside the U.S. Government as purportedly authentic Department documents." Second Declaration of Eric F. Stein ("Second Stein Decl.") ¶ 23. This includes the particular documents plaintiff proffers as Exhibits 1-26 in support of its motion. Second Stein Decl. ¶ 24. Despite plaintiff's arguments and the material it now offers, the information the government withheld as exempt has not been officially disclosed.[1] It therefore remains protected.

#### A.  Legal Standard

A prior official disclosure of classified information prevents the government from subsequently withholding the information under FOIA exemption 1. *See New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 120 (2d Cir.), *opinion amended on denial of reh'g,* 758 F.3d 436 (2d Cir. 2014), *supplemented,* 762 F.3d 233 (2d Cir. 2014). But the Second Circuit applies a "strict test" to claims of official disclosure. *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009). Under that test,

> [c]lassified information that a party seeks to obtain . . . is deemed to have been officially disclosed only if it (1) "[is] as specific as the information previously

---

[1] All references in this brief to the unauthorized disclosure of classified information or the unofficial release of information on WikiLeaks are hypothetical. The discussion here should not be read to suggest that the State Department confirms or denies the authenticity of any information or document available on WikiLeaks. To the contrary, the Department does not comment on the authenticity of WikiLeaks documents or their contents. *See* Second Stein Decl. ¶¶ 23-24.

released," (2) "match[es] the information previously disclosed," and (3) was
"made public through an official and documented disclosure."

*Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)); *accord N.Y. Times Co. v. U.S.*

*Dep't of Justice*, 756 F.3d at 120 & n.19.

      With respect to the specificity requirement, "[p]rior disclosure of similar information

does not suffice; instead, the *specific* information sought by the plaintiff must already be in the

public domain by official disclosure." *Wolf*, 473 F.3d at 378 (emphasis in original). This

condition "recognizes 'the Government's vital interest in information relating to national security

and foreign affairs.'" *Id.* (quoting *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir.

1993)); *see also Military Audit Project v. Casey*, 656 F.2d 724, 752-53 (D.C. Cir. 1981)

(rejecting claim that public disclosure of some information about a particular subject necessarily

results in waiver as to all information about that subject).

      Further, if there are "substantive differences" between the information requested and the

information previously disclosed, a plaintiff cannot satisfy the "matching" requirement. *ACLU v.*

*U.S. Dep't of Def.*, 628 F.3d 612, 621 (D.C. Cir. 2011). In *New York Times*, the Second Circuit

explained that it did not "understand the 'matching' aspect of the *Wilson* test to require absolute

identity," but it nevertheless required a high degree of overlap between the information

previously disclosed and the information the agency sought to protect. 756 F.3d at 116, 120.

Specifically, in finding that the government had officially acknowledged certain legal analysis in

a memorandum prepared by the Office of Legal Counsel ("OLC") of the Department of Justice

("DOJ") about a contemplated lethal operation, the court concluded that the legal analysis in the

OLC memorandum "virtually parallel[ed]" legal analysis that DOJ had previously released in a

white paper on the same topic. *Id.* at 116. Indeed, without a high degree of overlap between two

pieces of information, courts could not assess whether the protected information was "as specific

as the information previously disclosed." *Id.* at 120; *see also Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 421 (2d Cir. 1989) (courts may not find official acknowledgment unless "the government has *officially* disclosed the *specific* information being sought" (emphases in original)).

Finally, there is a "critical difference between official and unofficial disclosures" of classified information. *Wilson*, 586 F.3d at 186. As Judge Katzmann's separate opinion in *Wilson* recognizes, even when classified information has been released through unofficial means, an agency's further official acknowledgment of that information may cause at least three additional harms: it removes the benefits of plausible deniability; may invite foreign retaliation; and may damage future intelligence-gathering capabilities. *See id.* at 197-98 (Katzmann, J., concurring in the judgment) (citing FOIA cases). For these reasons, official acknowledgment is not a matter of inference from circumstantial evidence, and no official disclosure of classified information is created by "(1) widespread public discussion of a classified matter, . . . (2) statements made by a person not authorized to speak for the Agency, . . . or (3) release of information by another agency, or even by Congress." *Id.* at 186 (majority opinion) (internal citations omitted). Rather, official acknowledgment may only be made under the three-part test outlined above. *Id.*

### B.  The Purported WikiLeaks Documents Fail the *Wilson* Test

At the outset, the Second Stein Declaration demonstrates that the State Department reviewed plaintiff's filings in support of its motions, reviewed its initial withholdings, and re-released fifteen documents with additional information unredacted. Second Stein Decl. ¶ 19. The new releases were made for consistency with the prior releases. Second Stein Decl. ¶ 19.

To the extent plaintiff argues that the supposed availability of the redacted records in unredacted form on a publicly accessible website demonstrates official acknowledgment, plaintiff is mistaken.

As an initial matter, the State Department did not in the past, and does not now, comment on the authenticity of "documents that have not been officially disclosed but that are distributed by persons outside the U.S. Government as purportedly authentic Department documents," such as the WikiLeaks documents plaintiff provides in support of its motion. Second Stein Decl. ¶ 23. In particular, the Department affirms in this case that it "has not admitted that the documents provided by Plaintiff in Exhibits 1-26 attached to the Declaration of Michael A. Radine (Dkt. 20) are authentic Department documents." Second Stein Decl. ¶ 24.[2] Thus, the WikiLeaks documents must at a minimum fail at the third step of the *Wilson* test because they were not made available as the result of an official disclosure. *See Wilson*, 586 F.3d at 186.[3]

Indeed, the only court to address the issue held the State Department had not officially disclosed diplomatic cables that a requester argued were available on WikiLeaks. *See Am. Civil Liberties Union v. Dep't of State*, 878 F. Supp. 2d 215, 223–24 (D.D.C. 2012) ("*ACLU v. State*") (applying the same test set forth in *Wilson*, and citing *Fitzgibbon v. Cent. Intelligence Agency*, 911 F.2d 755, 765 (D.C. Cir. 1990)). Because the government had plausibly explained why release of certain information withheld as classified could reasonably be expected to harm

---

[2] This has always been the State Department's position. From the time in 2010 when purported State Department documents first began appearing on WikiLeaks, the Department consistently declined to comment on particular documents or their authenticity. *See, e.g.*, Philip J. Crowley, Daily Press Briefing (Dec. 7, 2010), available at https://2009-2017.state.gov/r/pa/prs/dpb/2010/12/152489.htm ("[W]e do not comment on any particular cable," and recognizing that documents released without authorization may be altered prior to their publication); Victoria Nuland, Daily Press Briefing (Aug. 30, 2011), available at http://2009-2017.state.gov/r/pa/prs/dpb/2011/08/171281.htm ("I'm not going to comment today on the authenticity of the documents released by WikiLeaks.").

[3] Further, plaintiff's arguments lack foundation—and fail the first and second *Wilson* prongs—to the extent plaintiff argues that the redacted classified contents of the records released in this case are shown by WikiLeaks documents.

national security, *id.* at 221-23, the Court upheld the assertion of exemption 1 and granted the government summary judgment, *id.* at 225.

Plaintiff's arguments here do not show that the State Department has officially acknowledged the WikiLeaks documents or their contents. First, general comments by State Department employees about the potential criminal consequences of improperly distributing government information, *see* Pl. Br. 10, do not constitute an official acknowledgment that any document is authentic. Just as in *ACLU v. State*, plaintiff here cannot "tether" the "generalized and sweeping comments" of government personnel "to the specific information at issue in this case—the [specific] cables identified in its request." 878 F. Supp. 2d at 224.

Second, an analysis by the Department of Defense that purports to describe WikiLeaks documents as "'derived from the [State] database,'" Pl. Br. 9-10 (quoting Radine Decl., Ex. 29), does not abrogate the State Department's exemptions for two separate reasons: the comments are not specific to the documents plaintiff offers here, and the comments were made by another agency. The cited DOD passage describes WikiLeaks documents generally, not the particular documents at issue in this case, and so cannot meet the matching and specificity prongs of the *Wilson* test. Furthermore, the DOD comment fails to demonstrate the *State Department's* official acknowledgment of anything. The Second Circuit has held that the statements of one department or branch of the government do not constitute an official acknowledgment by another. In *Wilson* itself, for example, a letter apparently authored by the CIA was published (and publicly available) in the Congressional Record. 586 F.3d at 180-81, 189-90. The Second Circuit nonetheless held that the CIA—which had never confirmed the authenticity of the published letter or its contents—had not waived any classification through official acknowledgment. *Id.* at 188-91. The CIA's refusal to confirm or deny the letter's contents—that is, its refusal to make an

official acknowledgment—was valuable because it "necessarily preserves some increment of doubt regarding the reliability of the publicly available information." *Id*. at 195; *accord Florez v. Cent. Intelligence Agency*, 829 F.3d 178, 186 (2d Cir. 2016). Similarly, in *Frugone v. C.I.A.*, the D.C. Circuit upheld the CIA's refusal to confirm or deny whether it held employment records related to the requester, even though the Office of Personnel Management had apparently acknowledged his prior employment at the CIA. 169 F.3d 772, 774-75 (D.C. Cir. 1999). Given the different roles of various executive agencies, requiring an agency that engages in discreet or sensitive activities to confirm or deny statements of other agencies could lead to new harms covered by FOIA exemptions. *Id*.

Likewise, plaintiff's efforts to prove that the WikiLeaks documents are authentic under Federal Rule of Evidence 901 using various other sources of information, *see* Pl. Br. 9-12, does not satisfy the *Wilson* test. Indeed, it entirely misses the point. The State Department has withheld some information under exemption 1 as classified. The exemption can only be waived if the agency has officially acknowledged that information—that is, if the agency itself has come forward and officially made that very information available to the public. But whether or not genuine copies of that information have been *unofficially* made available through illicit means is irrelevant to the *Wilson* inquiry.

Finally, to the extent plaintiff suggests that exemptions have been waived because the very documents sought in this case were available on WikiLeaks "as declassified documents," Pl. Br. 14-15, this argument fails for largely the same reasons. The State Department has neither confirmed nor denied whether the WikiLeaks documents are authentic, and they have not been officially disclosed under *Wilson*'s third prong. For this reason (and as explained further below), the Department followed the proper procedures in reclassifying certain material under section

1.7(d) of Executive Order 13526. Section 1.7(c), governing reclassification of information previously disclosed to the public under proper authority, is irrelevant. Documents on WikiLeaks, and information contained therein, have not been released under proper authority. Rather, as explained in both the first and second Stein declarations, the reclassification conducted here was pursuant to section 1.7(d) of the EO, covering "[i]nformation that has not previously been disclosed to the public under proper authority," which "may be classified or reclassified after an agency has received a request for it under the Freedom of Information Act" as long as its procedures are met. E.O. 13526 § 1.7(d).[4] The Stein declarations make clear this is what happened in this case. *See* First Stein Decl. ¶ 13; Second Stein Decl. ¶¶ 11-12, 15. Additional detail on the reclassification process for these documents is provided below in section II.A.

### C. Plaintiff's Non-WikiLeaks Documents Also Fail to Show Official Disclosure

In addition to documents apparently obtained through WikiLeaks, plaintiff offers a variety of officially disclosed documents from various U.S. government sources in an effort to show that some information withheld in this case has previously been officially acknowledged. *See* Radine Decl. Exs. 29-40; Pl. Br. 15-22. This effort fails.

First, plaintiff's argument lacks foundation to the extent it relies on information from WikiLeaks documents to purport to show the content of redacted portions of records released in this FOIA case. As the WikiLeaks documents are not official disclosures, they cannot be relied upon as a source of information regarding what has been withheld from the documents at issue here.

---

[4] That paragraph's procedures "also apply to those situations in which information has been declassified in accordance with a specific date or event determined by an original classification authority in accordance with section 1.5 of [the] order." *Id.*

Second, other than Exhibit 37, the non-WikiLeaks documents plaintiff has submitted in support of its motion are not State Department documents, but rather are from the Defense Department. *See* Radine Decl. ¶¶ 30-36, 38-44 (describing various documents originating from official military releases, FOIA requests, and items docketed in the court-martial of Chelsea Manning). As explained above in section I.B, records or information from one agency cannot constitute an official acknowledgment of information from or pertaining to a separate agency.

Additionally, even if a disclosure from DOD could serve as an official acknowledgement of State Department information (and it cannot), the information contained in those DOD documents does not match or virtually parallel the specific information withheld in this case. The DOD documents do not address the specific foreign government information, foreign relations, or military or intelligence activities that form the basis of the classification of the information withheld under exemption 1. *See* Second Stein Decl. ¶ 20. While plaintiff points to a variety of public reporting and U.S. government documents on the topic of Iranian influence in Iraq, *see* Pl. Br. 15-22, documents addressing the same general topic as the withheld information cannot satisfy *Wilson*'s strict matching test. *See, e.g.*, *New York Times Co. v. FBI*, 297 F. Supp. 3d 435 (S.D.N.Y. 2017).

Finally, the one non-DOD document, Exhibit 37—which apparently consists of excerpts from a State Department Country Report on Terrorism for the year 2007—does not demonstrate an official acknowledgement of any of the withheld information. Exhibit 37 contains general discussions of terrorist activities in Iraq, and high-level discussion of Iran's efforts to finance and support those activities. *See* Radine Decl. Ex. 37 at 108, 172-73. But it contains no discussions or accounts of specific conversations with foreign officials, foreign government information, or U.S. military or intelligence information of the type that has been withheld here. This is

unsurprising: the reports, required by law, are published each year on the Department's official, public website, and would not contain such fine-grained, sensitive, and classified material. *See generally* 22 U.S.C. § 2656f (requiring yearly reports), *id*. § 2656f(c) (generally requiring reports to be unclassified). *Wilson*'s matching test has therefore not been met.

## II.     The Exemption 1 Redactions Protect Properly Classified Information

The government withheld under exemption 1 properly classified information that could reasonably be expected to damage national security if released. Plaintiff's attempts to second-guess the executive's predictions of harm are without merit, and contrary to the substantial deference that is owed to the executive branch in the realm of national security.

### A.  The Department Followed Proper Procedures for Reclassifying Information

Contrary to plaintiff's suggestions, *see* Pl. Br. 14-15, the government followed proper procedure when it reviewed each of the documents line-by-line to assess their current classification status.

As explained in the Second Stein Declaration, some of the information withheld under exemption 1 was reclassified at the time the Department processed plaintiff's FOIA requests. Second Stein Decl. ¶¶ 11-12, 15. While the date for automatic declassification of some of the requested documents had passed, under applicable law, the government is expressly permitted to review and reclassify "information that has not previously been disclosed to the public under proper authority" when it receives a FOIA request. E.O. § 13526 § 1.7(d); Second Stein Decl. ¶¶ 11-12. Such reclassification carries specific procedural requirements—a document-by-document review by a sufficiently high-ranking agency official, *see* E.O. § 13526 § 1.7(d)—and the agency followed these procedures. Second Stein Decl. ¶ 12, 15 (describing document-by-document review by appropriate officials).

Plaintiff's reliance upon section 1.7(c) of Executive Order 13526, *see* Pl. Br. 12, is misplaced. That section governs only the reclassification of information "after declassification and release to the public under proper authority." As explained by the Second Stein Declaration, none of the withheld information has been released to the public under proper authority. Second Stein Decl. ¶¶ 13, 25. Section 1.7(c) thus does not apply.

Other withheld information did not require reclassification, because its initial period of classification had not yet lapsed. Second Stein Decl. ¶ 10. Nonetheless, proper officials at the Department reviewed each document line-by-line and released some material because it would no longer reasonably be expected to harm national security. Second Stein Decl. ¶ 10.

Plaintiff's claim that the initial declassification timeframes for all of the documents must have been ten years misapprehends the governing executive orders. The Second Stein Declaration explains why certain information was properly classified under a predecessor executive order at the SECRET level with a timeframe of greater than ten years because the information met specific criteria, such as revealing foreign government information. Second Stein Decl. ¶¶ 8-9 (citing E.O. 12958 § 1.6(d)).

### B. The Government Has Logically and Plausibly Explained Why the Redacted Information Must Be Withheld Under Exemption 1 to Protect National Security

The government did not simply reclassify and withhold all information that had ever been marked as classified in the documents plaintiff requested. The Department has explained that it released significant information that, while previously classified, would no longer reasonably be expected to harm national security if released. *See* Second Stein Decl. ¶ 16 ("In reviewing the records requested in this case, some information for which the declassification date has not passed was nevertheless declassified because it was determined that its disclosure could no longer reasonably be expected to result in damage to the national security. In addition, some

records no longer at issue in this case whose original declassification dates had not passed were declassified and released in full because the disclosure of the information in them could no longer reasonably be expected to result in damage to the national security.").

As to the information that remains classified, the government has logically and plausibly explained why releasing withheld information could reasonably be expected to harm national security, and it therefore remains properly classified. Plaintiff's arguments to the contrary are unavailing.

Plaintiff's claim that there can be no harm from an official release of the information now withheld as classified because is already available in the WikiLeaks documents, *see* Pl. Br. 7-8, 14-15, lacks foundation and fails to apprehend the significance of official government action in the realms of foreign affairs and intelligence.

First, the argument assumes the redacted portions are classified, and unauthenticated government documents such as the WikiLeaks documents cannot show the redacted content.

Second, even assuming (for the sake of argument) that the contents are in fact the same, plaintiff overlooks the importance in diplomacy and intelligence of *official* statements. As the Second Circuit explained in *Wilson*—in which a letter on CIA letterhead and apparently signed by a CIA official was published in the Congressional Record, *see* 586 F.3d at 195—an agency's ability to decline to confirm or deny information is not just a doctrine of FOIA or classification waiver. That ability is also a key tool for the conduct of foreign affairs and intelligence activities:

> [A] bureaucratic transmittal from the CIA's personnel department to a former employee is hardly akin to the CIA director personally reading relevant information into the Congressional Record, as took place in *Wolf v. CIA*, 473 F.3d at 379. The distinction is not only that the latter act constituted an "official disclosure," but also that anything short of such a disclosure necessarily preserves some increment of doubt regarding the reliability of the publicly available information. The CIA's refusal to permit the elimination of that remaining doubt with respect to Ms. Wilson's pre-2002 service itself protects valuable information,

12

namely, the accuracy of the facts stated in the February 10 Letter and whether
there is anything left to hide on the subject. *See Phillippi v. CIA*, 655 F.2d 1325,
1331 (D.C. Cir. 1981) ("There may be much left to hide, and if there is not, that
itself may be worth hiding."). We decline to discount the importance of such
"lingering doubts" to maintaining the secrecy of CIA sources and methods
relating to unconfirmed periods of Ms. Wilson's Agency service, and to
preserving the options of deniability and professed ignorance that remain
important niceties of international relations.

586 F.3d at 195 (some citations omitted).

Here, too, the Second Stein Declaration explains, as a general matter, the further harms
that could be expected to arise from official confirmation of information that is already in the
public domain. *See* Second Stein Decl. ¶ 26. As Stein notes, official confirmation of public
information tends to escalate potential international conflicts by denying both the United States
and foreign actors the ability to plausibly deny such information. With respect to foreign
government information, Stein notes that "[a]bsent U.S. confirmation, a foreign official may
plausibly argue that unofficial publicly available information has been altered or is simply
inaccurate; by contrast, a foreign official may only deny officially released U.S. Government
information by arguing that the United States has falsified or misrepresented the information."
Stein Decl. ¶ 26. Similarly, with respect to intelligence sources or methods, "[a]bsent U.S.
confirmation, a foreign country or official may plausibly argue that unofficial publicly available
information is merely speculation; by contrast, U.S. confirmation of intelligence equities with
respect to a particular matter may force a foreign country or official to respond or retaliate."
Stein Decl. ¶ 26. And with respect to information relating to foreign relations, "[c]onfirmation
that the Department or some of its officials hold a particular foreign policy view or position can
inflame a situation or cause a foreign government or official to react in a way that speculation or
even strong suspicion cannot." Stein Decl. ¶ 26. These clear explanations are logical and

13

plausible. *Am. Civil Liberties Union v. United States Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018).[5]

Plaintiff also baldly argues that, in its view, the national security of the United States will not be damaged by release of the withheld information because information similar to the withheld information has already been disclosed either officially or through press accounts. Pl. Br. 15-22. Such an argument cannot serve to overcome the deference afforded the executive branch in the national security arena. It is not up to private parties such as plaintiff—however well-intentioned—to judge what will (or will not) harm national security. That is the responsibility of the executive branch. *See, e.g.*, *Intellectual Prop. Watch v. United States Trade Representative*, 205 F. Supp. 3d 334, 353 (S.D.N.Y. 2016) ("[T]he agencies responsible for national security have unique insights into what adverse effects might occur as a result of public disclosures." (internal quotation marks and alterations omitted)).

Plaintiff's failure to understand the unique role of the executive branch in judging national security harms infects its characterization of the withheld documents. Plaintiff claims generally that "the subject matter" of withheld information is "Iranian interference in Iraqi security affairs and Iraqi attempts to deal with that interference," which allegedly is "so well-known and for so long as to be entirely stale." Pl. Br. 16. But this characterization of the information simply matches plaintiff's own goals in other litigation, *see* Pl. Br. 1 (describing plaintiff's representation of American servicemembers against Iran), and does not grapple with the specific explanations of harm the government provides. Describing the records at this high

---

[5] Plaintiff's citation (see Pl. Br. 7-8) to *Washington Post v. U.S. Dep't of Def.*, 766 F. Supp. 1, 9-10 (D.D.C. 1991), which was rendered prior to *Wilson* and is not binding on this Court, is not to the contrary. In particular, the Department's justifications clearly demonstrate why "official confirmation or acknowledgement of [publicly available] information may be harmful to national security." *Id*. at 10.

level of generality simply ignores the particular harms that the State Department has identified in disclosing (for example) U.S. officials' specific discussions with Iraqi politicians and officials, particular instances of U.S. diplomatic strategy, and intelligence sources and methods. The government does not deny that there has been significant public discussion of Iran's role in Iraq and Iraqi officials' response. But that does not show that it is illogical or implausible to conclude that disclosing (for example) official U.S. accounts of particular discussions with Iraqi officials who remain active in politics today could reasonably be expected to harm U.S. national security. *See, e.g.*, First Stein Decl. ¶¶ 26, 29, 53, 68, 80, 105.

Finally, with respect to document C06627781, discussed in plaintiff's brief at 20, the Second Stein Declaration also notes that one redacted portion contains "details regarding explosively-formed penetrator (EFP) charges and their use in and introduction into Iraq." Second Stein Decl. ¶ 21. Release of this information could reasonably be expected to damage national security by "revealing intelligence sources and methods concerning EFPs and their use in and introduction into Iraq that could diminish the efficacy of such sources and methods." Second Stein Decl. ¶ 21. Although other publicly available information, including official U.S. government sources, discuss EFPs generally, the specific intelligence-related information withheld in the document has not been officially disclosed. Second Stein Decl. ¶ 21. For example, the withheld information "refers to a source, and to detailed evidence from intelligence sources and methods, which are not included in the official U.S. Government releases provided by Plaintiff." Second Stein Decl. ¶ 21. For these reasons, the withheld information has not been officially disclosed, and the national security harms that could reasonably be expected to result from its release are not eliminated by the availability of other general information about EFPs.

Ultimately, plaintiff's arguments on this point fail for essentially the same reason that they fail to show an official acknowledgment: while the previous disclosures plaintiff identifies relate to Iraq, they are significantly different from the withheld information. *See* Second Stein Decl. ¶ 20.

## III.    The Government's Exemption 3 Withholdings Are Proper

The government explained in its opening papers that portions of one document were withheld under FOIA exemption 3 because they contained intelligence-related information exempted from disclosure by two statutory provisions, 50 U.S.C. § 3024(i)(1) and 10 U.S.C. § 424. *See* Govt. Br. 11-12; First Stein Decl. ¶ 93. Plaintiff does not contest that either provision is an exempting statute; instead, it argues that the government has not shown that release of the exemption 3 information would harm national security. *See* Pl. Br. 22. This argument mistakes the law. Exemption 3 does not require a showing of national security harm; instead, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner v. NSA*, 592 F.3d 60, 72 (2d Cir. 2009) (quotation marks omitted); *Florez v. C.I.A.*, No. 14-CV-1002 SHS, 2015 WL 728190, at *8 (S.D.N.Y. Feb. 19, 2015) (citing examples); *see also Associated Press v. Fed. Bureau of Investigation*, 265 F. Supp. 3d 82, 97 (D.D.C. 2017) (noting that invocation of exemption 3 under the National Security Act "includes the power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source or method," and that "the Act presents an easier hurdle for the agency under Exemption 3 than does Executive Order 13,526 under Exemption 1, in that it does not require the FBI to determine that release of the information could reasonably be expected to result in damage to national security").

The First Stein Declaration explained that information withheld in one document includes information concerning intelligence sources or methods, and is exempt under 50 U.S.C.

§ 3024(i)(1), and also concerns the function of one or more DOD agencies whose functions are immunized from disclosure by 10 U.S.C. § 424. First Stein Decl. ¶ 93. This meets the government's burden, and plaintiff's response does not render the explanation implausible or illogical.

## CONCLUSION

The government's motion for summary judgment should be granted, and plaintiff's cross-motion should be denied.

Dated:  December 3, 2018
        New York, New York

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney
                                    Southern District of New York

                        By:     /s/ Peter Aronoff
                                PETER ARONOFF
                                Assistant United States Attorney
                                86 Chambers Street, Third Floor
                                New York, New York 10007
                                Telephone: (212) 637-2697
                                Facsimile: (212) 637-2717
                                E-mail: peter.aronoff@usdoj.gov

17