UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
OSEN LLC,                           :
                                    :
      Plaintiff,                    :
                                    :     18-cv-6070 (JSR)
      -v-                           :
                                    :     OPINION AND ORDER
UNITED STATES DEPARTMENT OF STATE,  :
                                    :
      Defendant.                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

This is a case about the impact of WikiLeaks on the Government's disclosure obligations under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. In response to a FOIA request filed by plaintiff Osen LLC ("Osen"), the United States Department of State ("State") produced, inter alia, 26 diplomatic cables that were in redacted form. State claims that the redacted information is exempt from disclosure under FOIA exemption 1, which permits an agency to withhold properly-classified materials "to be kept secret in the interest of national defense or foreign policy," and exemption 3, which permits an agency to withhold records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(1), (b)(3). Osen responds that, inasmuch as the full content of the cables is seemingly available to the public on WikiLeaks, State cannot plausibly claim that any harm would result from their release in full.

1

The parties have cross-moved for summary judgment. Having now fully considered the parties' written and oral arguments, the Court concludes that the documents were properly redacted and therefore grants State's motion for summary judgment, and denies Osen's cross-motion for summary judgment, for the reasons discussed below.

**I.  Background**

On December 28, 2017, Osen submitted a FOIA request to State for six cables, identified by name. See Declaration of Eric F. Stein ("Stein Dec."), Dkt. 17, ¶ 8; Compl., Dkt. 1, ¶ 22 & Ex. A. On June 6, 2018, Osen submitted a second request for an additional thirty-six cables, also identified by name. See Stein Dec. ¶ 8; Compl. ¶ 24 & Ex. C. Osen filed the instant suit on July 5, 2018 after State failed to respond substantively to either request. See Compl.

State subsequently located 40 of the 42 documents requested and released 11 in full and 29 in redacted form. See Stein Dec. ¶ 9. Osen filed for summary judgment seeking the release in full of 26 of the redacted documents, all diplomatic cables that Osen alleges are publicly available on WikiLeaks. See Memorandum of Law in Support for Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem."), Dkt. 19. Osen did not challenge the adequacy of State's search. See Stein Dec. ¶ 10; Pl. Mem.

2

State opposed and also filed for summary judgment upholding its withholding decisions. See Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Dkt. 16 ("Def. Mem."); Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment, Dkt. 21 ("Def. Rep."). During motion practice, State re-released 15 of the documents, removing some of the prior redactions. See Def. Rep.; Second Declaration of Eric Stein ("Stein Dec. 2"), Dkt. 22, ¶ 19. Osen continues to contest the remaining redactions. See Reply Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl. Rep."), Dkt. 23.

State has filed a "Vaughn" index and supplemental affidavit addressing the contents of the documents and reasons for the redactions. See Stein Dec.; Stein Dec. 2. The 26 documents are all diplomatic cables related to the U.S. presence in Iraq that describe specific meetings or interactions between U.S. Government officials and Iraqi officials or political figures, "relating each side's noteworthy remarks and in some cases commenting on them and analyzing them." Stein Dec. 2 ¶ 20; see also Declaration of Michael J. Radine ("Radine Dec."), Dkt. 20.

## II. Discussion

FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of

3

federal agencies." Halpern v. FBI, 181 F.3d 279, 286 (2d Cir. 1999).[1] "Upon request, FOIA mandates disclosure of records held by a federal agency unless the documents fall within enumerated exemptions." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7 (2001). "[C]onsistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." Id. at 8.

This Court reviews an agency's decision to withhold records under a FOIA exemption de novo. 5 U.S.C. § 552(a)(4)(B). See also U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) ("Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden on the agency to sustain its action and directs the district courts to determine the matter de novo."). "The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009). However, "[a]ffidavits or declarations giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

4

sustain the agency's burden" and "affidavits submitted by an agency are accorded a presumption of good faith." Id.

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes." Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys., 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009). A party requesting summary judgment must demonstrate that there is "no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment in favor of the agency is appropriate where the agency's submissions provide "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith." Am. Civil Liberties Union v. U.S. Dep't of Def., 901 F.3d 125, 133 (2d Cir. 2018) (hereinafter, "ACLU"). Put more succinctly, an agency's justification for applying a FOIA exemption "is sufficient if it appears logical and plausible." Id.

In applying de novo review, the Second Circuit has directed courts to consider "the context within which we conduct that review [as] of paramount importance." ACLU, 901 F.3d at 134. "[C]oncerns of national security and foreign relations do not warrant abdication of the judicial role." Id. (quoting Holder v. Humanitarian Law Project, 561 U.S. 1, 34 (2010)). However, in

5

exercising this role, courts must remain cognizant of the "relative competencies of the executive and judiciary," which make it "bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies" as long as the court has "sufficient information to evaluate whether those judgments were logical and plausible." Id.

State contends that the redacted information sought here is properly withheld under either Exemption 1, which permits an agency to withhold classified information "to be kept secret in the interest of national defense or foreign policy," 5 U.S.C. § 552(b)(1), or Exemption 3, which permits an agency to withhold records that are "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3). Osen argues, first, that State has, subsequent to the WikiLeaks disclosures, voluntarily disclosed the information here at issue such that it can no longer claim a FOIA exemption, and, in the alternative, that the information does not meet the standards of Exemptions 1 and 3.

### A. Official Disclosure

"Voluntary disclosures of all or part of a document may waive an otherwise valid FOIA exemption." N.Y. Times Co. v. U.S. Dep't of Justice, 756 F.3d 100, 114 (2d Cir.), opinion amended on denial of reh'g, 758 F.3d 436 (2d Cir. 2014), supplemented, 762 F.3d 233 (2d Cir. 2014). Requested information "is deemed to have been officially disclosed only if it (1) is as specific as

the information previously released, (2) matches the information previously disclosed, and (3) was made public through an official and documented disclosure." Wilson v. CIA, 586 F.3d 171, 186 (2d Cir. 2009).[2]

Osen advances two separate arguments that the government has made qualifying disclosures of the redacted information.

First, Osen argues that the government's statements regarding the unauthorized disclosure of documents on WikiLeaks constitute an official acknowledgement of the information within the cables concerned here. See Pl. Mem. at 9-10; Pl. Rep. at 4-5. State responds that it has not admitted that the WikiLeaks documents in question are authentic State documents. See Stein Dec. 2 ¶ 24. Osen points to two specific statements as official acknowledgments: remarks made by State Assistant Secretary Philip J. Crowley in a press briefing in December 2010 ("press

---

[2] Osen suggests that the Wilson test is inapplicable here as Wilson involved the CIA, rather than State. See Pl. Rep. at 1, 4. However, the Second Circuit has applied the Wilson test for official disclosure to agencies other than the CIA. See, e.g., N.Y. Times, 756 F.3d at 120 (discussing whether information in an OLC-DOD memorandum had been officially disclosed). Moreover, the case's logic is not limited to activities of the CIA specifically, as opposed to the U.S. government generally, and the Wilson court cited cases involving the Department of State and the Department of Navy, not just the CIA. Wilson, 586 F.3d at 186 (citing Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 421 (2d Cir. 1989); Afshar v. Dep't of State, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983)).

statement") and an Information Review Task Force Report issued by the Department of Defense in June 2011 ("IRTF report").[3]

However, neither the IRTF report nor the press statement meet the Wilson test's matching or specificity requirements. The press statement merely acknowledges that a leak occurred without discussing specifically any of the documents leaked or their content.[4] The IRTF report describes the documents only in cumulative terms, finding that "[t]he compromised diplomatic cables are derived from the [State] database," but making no reference to the identity of the specific cables at issue, their contents, or whether the versions on WikiLeaks were identical to, as opposed to merely "derived from," State documents. See Radine Dec., Ex. 29.

The Wilson test is a difficult fit for Osen's argument, which is not that the government has officially disclosed the

---

[3] Osen also argues that it can authenticate the cables available on WikiLeaks pursuant to Federal Rule of Evidence 901 using these statements, among other evidence. See Pl. Mem. at 9-12. However, the relevant question is not whether the WikiLeaks documents can be proven authentic; it is whether the government has officially disclosed their contents.

[4] See Pl. Mem. at 10 (citing Press Briefing, Ass't Sec'y Philip J. Crowley, (Dec. 1, 2010) ("First and foremost, somebody inside the United States Government who has authorized access to this material, downloaded it and passed it to someone who is not authorized to have it. That is a crime and we are investigating that crime and we'll hold the people responsible fully accountable."), available at https://web.archive.org/web/20101203165651/https://www.state.gov/r/pa/prs/dpb/2010/12/152235.htm).

information in the cables, but that, by acknowledging that the unauthorized publication of government documents on WikiLeaks occurred, the government has converted all leaked documents available on WikiLeaks into official disclosures. The difficulty of trying to force this argument into the terms of the Wilson test is not coincidental. Acknowledging the existence and scope of a leak does not have the same effect as officially disclosing the leaked information. As long as the information itself has not been officially disclosed, the justifications for the distinction between unofficially and officially disclosed information remain, as discussed in Wilson. See 586 F.3d at 186 (reasoning that "foreign governments can often ignore unofficial disclosures of CIA activities that might be viewed as embarrassing or harmful to their interests" but "cannot, however, so easily cast a blind eye on official disclosures made by the CIA itself"). Holding otherwise would be tantamount to forcing the government to make an official disclosure of any leaked information if it wanted to acknowledge and investigate the leak.[5]

---

[5] This, of course, does not mean that the existence of leaks can have no impact in any situation on the Government's FOIA obligations, as further discussed below, but that general statements acknowledging leaks are not official acknowledgements of the leaked information itself under the Wilson test. This holding is consistent with that of what appears to be the only the other court thus far to consider the impact of WikiLeaks on government disclosure obligations. See Am. Civil Liberties Union

9

Second, Osen argues that much of the redacted information has been disclosed in other non-WikiLeaks-related government disclosures, supplying a series of examples of State and Department of Defense documents containing information concerning, inter alia, Iranian involvement in Iraq, Iranian agents, and military actions in Iraq. See Pl. Mem. at 13-14 (citing exhibits). However, the cables here at issue are different from the official disclosures listed by plaintiff because the instant cables, unlike the disclosed documents, discuss "specific engagements between U.S. Government officials and foreign interlocutors, relating each side's noteworthy remarks and in some cases commenting on them and analyzing them." Stein Dec. 2 ¶ 20. While the Second Circuit has clarified that the "matching requirement" does not "require absolute identity" (as a "FOIA requester would have little need for undisclosed information if it had to match precisely information previously disclosed"), this does not imply that any overlap in information satisfies the matching requirement or that courts should not consider the specific nuances and contexts of the

---

v. Dep't of State, 878 F. Supp. 2d 215, 224 (D.D.C. 2012) ("No matter how extensive, the WikiLeaks disclosure is no substitute for an official acknowledgement and the [plaintiff] has not shown that the Executive has officially acknowledged that the specific information at issue was a part of the WikiLeaks disclosure.").

10

documents being compared. N.Y. Times, 756 F.3d at 116, 120, 120 n.20 (affirming that the Wilson test "remains the law of this Circuit" and finding the documents there in question "virtually parallel[ed]" each other). Here, the disclosed documents, while they may overlap to some degree with the subjects of conversation in the cables, do not relate the same discussions and, accordingly, by no means match or are as specific as the information redacted from the cables, as required by Wilson. [6]

Accordingly, the Court finds that the information at issue has not been officially disclosed and that State has not waived its right to assert exemptions.

**B. Exemption 1**

The Government argues that it has properly withheld information in all the documents concerned pursuant to FOIA exemption 1. Exemption 1 permits the government to withhold records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). State justifies its FOIA response under Exemption 1 based on the classification criteria of Executive

---

[6] State additionally argues any Department of Defense disclosures are irrelevant to State's ability to assert an exemption. As the Court finds that the Department of Defense disclosures otherwise fail the Wilson test, it does not reach this argument.

11

Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). Executive Order 13526 allows an agency to withhold information that is (1) classified by an "original classification authority," (2) "owned by, produced by or for or [] under the control of the United States Government;" (3) "pertains to" one of the categories of information specified in the Executive order," and (4) if "unauthorized disclosure of the information could reasonably be expected to cause identifiable and describable damage to the national security." Id. § 1.1(a)(1)-(4). The specific categories relevant here are "(a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology," and "(d) foreign relations or foreign activities of the United States, including confidential sources." E.O. 13526 § 1.1(a)(1)-(4).

The rationales given in the Vaughn index for the various redactions fall into two general categories. See Stein Dec.; Stein Dec. 2. First, the Government argues that disclosure of some of the redacted information would result in general harms to U.S. national security, such as "reducing the likelihood that senior foreign officials will be willing to convey sensitive information to the U.S. government" because the government did not keep the information confidential here, or "revealing diplomatic strategies, including points of leverage and

12

influence," and accordingly reducing these strategies' future effectiveness. Second, the Government argues that disclosure of some of the withheld information would result in specific harms in the Iraqi context, by either damaging U.S. relationships with foreign officials, some of whom remain active in Iraqi politics, or damaging stability in Iraq by revealing U.S. assessments or Iraqi officials' comments that could inflame political tensions.

Osen contends that the Government cannot plausibly claim either general or specific harms from disclosing this information as it already exists in the public domain on WikiLeaks. Osen argues that "[i]t is a matter of common sense that the presence of information in the public domain makes the disclosures of that information less likely to cause damage to the national security." Pl. Br. at 7 (quoting Wash. Post v. U.S. Dep't of Defense, 766 F. Supp. 1, 9 (D.D.C. 1991)). But, as the D.C. District Court case Osen cites for this point makes clear, "[i]t does not, however, follow that agencies must always disclose information already in the public domain," and courts have accordingly "treated agency justifications for withholding information already in the public domain with the same deference [they] accord[] to all agency justifications under Exemption 1." Wash. Post, 766 F. Supp. at 9. Holding otherwise would afford unwarranted power to leakers to force official government disclosure. It would, in effect, reward theft.

13

In this case, State's submissions clearly and plausibly outline why the harms it traces from official disclosure of the redacted information remain a risk despite any unofficial disclosures. See Stein Dec. 2 ¶ 26 (detailing the national security risks of official disclosures with regards to the various types of information withheld, such as removing plausible deniability or forcing a response or retaliation from a foreign government). These rationales are consistent with the Second Circuit's recognition in Wilson that anything short of an official acknowledgement "necessarily preserves some increment of doubt regarding the reliability of the publicly available information," which serves the purpose of protecting "the accuracy of the facts stated...and whether there is anything left to hide on the subject." 586 F.3d at 195. The Wilson Court explicitly "decline[d] to discount the importance of such 'lingering doubts' to maintaining the secrecy of CIA sources and methods...and to preserving the options of deniability and professed ignorance that remain important niceties of international relations." Id. These same concerns are fairly raised here by State's confidential exchanges with foreign government officials and others.

Plaintiff's remaining arguments simply dispute State's assertions regarding the risks posed by disclosure, for instance, arguing that so much information about the conflict in

14

Iraq is in the public domain already that adding more information would have no effect. But such bald assertions are not sufficient to overcome the detailed affidavits submitted by State to the contrary, which are afforded a presumption of good faith as there is no evidence of bad faith and no contradicting evidence in the record. See Wilner, 592 F.3d at 69; ACLU, 901 F.3d at 125. State has met its burden to distinguish logically and plausibly between the requested information here and other official disclosures, and logically and plausibly outlined how the risks posed by official disclosure in this case survive unofficial disclosures.

Therefore, the Court finds summary judgment warranted to State on its withholdings of information pursuant to Exemption 1.

### C. Exemption 3

Exemption 3 permits an agency to withhold records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The applicability of Exemption 3 does not depend on the contents of the record at issues; "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." Wilner, 592 F.3d at 72.

The Government withheld information from document C06627781, an eight-page cable dated July 20, 2005 from the U.S.

Embassy in Baghdad to State on the ground that it was exempted from disclosure under Section 1112 of the National Defense Authorization Act for Fiscal Year 1997, as amended, 10 U.S.C. § 424, because it concerns intelligence sources and methods and because it concerns the function of one or more of the organizations of the Department of Defense listed in 10 U.S.C. § 424 (the Defense Intelligence Agency, the National Reconnaissance Office, and the National Geospatial-Intelligence Agency), and Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1). See Stein Decl. ¶ 93.

Osen objects that State has inadequately explained its invocation of the statutes because "[i]t is unclear who or what the 'sources or methods' are, or why they cannot be more narrowly redacted."[7] Pl. Rep. at 2 n.2. However, State is not required to explain further what "sources or methods" are at issue, and the Court finds that the material falls within the relevant statutes. Therefore, the Court grants summary judgment to State as to its redactions pursuant to Exemption 3.

---

[7] Osen also appears to object that State is improperly invoking a "sources and methods" objection that only applies to the CIA. However, the cases that Osen cites involving the CIA are addressing an assertion of Exemption 3 pursuant to a different statutory provision that does in fact only implicate the CIA. See Pl. Rep. at 1-2 (citing Whalen v. U.S. Marine Corps, 407 F. Supp. 2d 54, 59 (D.D.C. 2005); Larson v. Dep't of State, 565 F.3d 857, 863 (D.C. Cir. 2009)). State is not asserting Exemption 3 pursuant to this statutory provision.

16

### III. Conclusion

For the reasons stated above, the Court grants State's motion for summary judgment in full, and denies Osen's motion for summary judgment. The Clerk of the Court is directed to close all open docket entries and enter judgment.

SO ORDERED

Dated: New York, NY
February 5, 2019

JED S. RAKOFF, U.S.D.J.